UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | Judge Gwin |
| Plaintiff ) | |
| ) | Case No. 1:18 CR 679 |
| v. ) | |
| **FRANCISCO FLORES,** ) | DEFENDANT'S |
| ) | SENTENCING |
| ) | MEMORANDUM |
| Defendant, ) | |
| ) | |

**Defendant's Sentencing Memorandum**

Defendant, Francisco Flores, by and through undersigned counsel, respectfully submit this Sentencing Memorandum.

Respectfully submitted,

/s/ Jason T Lorenzon_____
Jason T. Lorenzon (#00082910)
Lorenzon Law LLC
5005 Rockside Rd Suite 600
Independence, OH 44131
Phone: (216) 537-3722

\_\_\_/s/ Patrick Espinosa_____
Patrick Espinosa
Ohio Bar No. 0093126
Lorenzon Law LLC
5005 Rockside Rd Suite 600
Independence, OH 44131
Phone: (216) 537-3722

**PRELIMINARY STATEMENT**

On May 22, 2019, Francisco Flores pleaded guilty to the nine counts in the indictment. Francisco Flores is currently scheduled for sentencing on September 3, 2019. Mr. Flores has been in continuous federal custody since his arrest on November 14, 2019.

This Sentencing Memorandum is submitted on behalf of Mr. Flores in support of a sentence "sufficient, but not greater than necessary" to achieve the statutory purposes of punishment as required by 18 U.S.C. § 3553(a)(2). In this instance, there is a joint recommendation to use the advisory sentencing guidelines computation agreed to by the defendant and the United States Attorneys Office and as listed in the Presentence Investigation Report (PSI) provided by Ms. Jennifer Deserto of the U.S. Pretrial Services & Probation Office.

**BACKGROUND**

Francisco was born on June 10, 1979 in La Virtud, Honduras to Juana Flores Games and Francisco Abrego Alas. Mrs. Flores resides in Honduras and was supported in part by the defendant. The defendant's father passed away from stomach cancer in 2018. Mr. Flores has six siblings still living, three in the United States and three in Honduras. As a boy, Mr. Flores studied and help his father raise corn and cattle. The youngest of ten siblings, Francisco first came to the United States when he was 18.  Mr. Flores first moved to the United States in response to devastation caused by hurricane Mitch in 1998. Mr. Flores was granted legal status (TPS) and has maintained legal status throughout his life in the United States.

Mr. Flores is a devoted family man who, through hard work and success, has become a successful business owner and the patriarch of his family despite the fact that he is the youngest of his sibling. The conduct that led to the indictment and plea in this case is an aberration in an

otherwise honest, law-abiding and honorable life. The letters that have been submitted on his behalf paint Francisco Flores as the man he really is: supportive, caring, honorable, devoted, hardworking, and dedicated to his family and friends.

Mr. Flores has supported and provided opportunities to his family here in the United States as well as in Honduras.  He has provided financial support and job opportunities to not only his siblings but many extended family members as well. Mr. Flores financially supports his six children: Giovani, Taylor, Liza, Ester, Genesis, and Anthony. All of the children are healthy and have a good relationship with Mr. Flores. Unsurprisingly, those children are missing their father and the support that he provides. Up until his incarceration, Mr. Flores was living with the mother of his two youngest children in Columbus, Ohio. Mr. Flores was the only breadwinner for his immediate family.

Mr. Flores worked for many years as a laborer in flooring until he finally went on his own in 2008. He began as a foreman and later went on to run many flooring crews as a contractor for larger, well known, flooring companies. Mr. Flores began to enjoy financial success around 2012 and shared that success with friends and family as evidenced by the submitted letters. He built on his success and ran a company that provided dozens of job opportunities. Until his incarceration, Mr. Flores' company was on pace to gross over three million dollars ($3,000,000.00 USD). Through hard work and sacrifice, Mr. Flores achieved the American Dream.

## OFFENSE CONDUCT

Francisco Flores has pleaded guilty to the nine counts contained in the indictment. Mr. Flores had been under investigation by FBI, HIS, and the Ohio HIDTA since at least 2017. Mr.

Flores does not dispute the facts contained in the plea agreement or presentence report. On several separate occasion, Mr. Flores did exchange cash for checks from Flores Flooring and cash for firearms that were initially purchased legally. Mr. Flores profited less than ten-thousand dollars ($10,000.00 USD) in his transactions leading to the indictment. Mr. Flores was at all times truthful and cooperative with all law enforcement agents. As previously stated in the Plea Agreement and the PSI, Mr. Flores does fully accept responsibility for his actions and his criminal conduct. The USAO has no reason to believe that Mr. Flores has not clearly and affirmatively accepted personal responsibility for his criminal conduct.

## NEED FOR JUST PUNISHMENT

Mr. Flores has many mitigating factors that should weigh on his punishment. Section 3553(a)(2)(A) instructs the Court to craft a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. A number of factors determine whether a particular sentence is "just." A punishment is "just" insofar as it "fit[s] the crime," *United States v. Wilson*, 350 F. Supp. 2d 910 at 916, and "reflect[s] the gravity of the defendant's conduct." *Id.* (quoting S. Rep. 98-225, 1984 U.S.C.C.A.N. 3182, 3258-59). A "just punishment" must also take into account the cost of the defendant's criminal conduct and the cost society must undertake to punish for the offense. *United States v. Zakhor,* 58 F.3d 464, 466 (9th Cir.1995). We respectfully ask the court to weigh the following mitigating factors when determining a just sentence.

We believe that there are several main factors that should weigh on Mr. Flores' sentencing. Among the more important ones is that the nature of the offenses was non-violent and it has been determined that there were no victims. This is the first time that Mr. Flores has

been on the wrong side of the law. Mr. Flores did not come to the United States to commit crimes, he came here to work and work hard he did. Mr. Flores spent years working tireless hours to build his flooring business. He would gather his crews at 5am every morning, Monday through Saturday, to ensure that his client's customers would have their flooring installed quickly and professionally. Years of hard work led to much success. Over the last several years, Mr. Flores has built his company into a multi-million-dollar business with revenues exceeding two million dollars. His guilty plea and his incarceration have undoubtedly left his company in tatters. The prospect of returning to run his business is virtually gone as well are his savings from running his successful business. Mr. Flores agreed to forfeit two hundred ten thousand, eleven dollars and fifty-four cents ($210,011.54USD) from his bank account and in U.S. currency. Only a portion of that we returned to his family to settle their affairs. His savings are gone along with the hope of near-term financial success. Mr. Flores also forfeited his firearms, which is a foregone conclusion. Mr. Flores has stated that he never wants to see or touch a firearm ever again.

  Mr. Flores' absence will also be felt by his family and friends. He was very generous with his success. His family and children were fully supported and did not have to worry about their next meal. Indeed Mr. Flores had children with other mothers but Mr. Flores dutifully paid well above court ordered child support to those children in addition to other payments. He would pay for different lessons, sports teams clothing and vacations just to name a few. That support he is now not able to give. Friends will also miss Mr. Flores' generosity. Francisco was always quick to offer support or a job when someone needed it. He was surrounded by family and friends that loved him as evidenced by the letters of support submitted. Mr. Flores' presence and support were also enjoyed by his family in Honduras, especially his elderly mother. Mr. Flores

would travel regularly to Honduras to visit family. Unfortunately, he lost his father last year and hopes to one day again see his mother. The absence of Mr. Flores' company will be felt by all.

Perhaps the most important factor to weigh in Mr. Flores' sentencing is the certainty of deportation following his sentence. The specter of deportation adds an additional punishment to this offense.  He will have to undergo immigration proceedings following the completion of his sentence.  In all likelihood he will be held in custody during the pendency of those proceedings, which can be extremely lengthy. Furthermore, because Mr. Flores pleaded guilty to trafficking firearms and money laundering, removal from this country is presumptively mandatory. Additional imprisonment for criminal offense would do nothing to advance the goals of deterrence or promote respect for the law, but would impose a significant expense on the tax-payers.  Therefore, subjecting Mr. Flores to a lengthy term of incarceration will cause an undue burden on limited government resources and would not support the purposes of punishment as required by 18 U.S.C. § 3553(a).

Deportation in of itself is also a harrowing prospect. Courts have recognized that deportation is an especially harsh penalty. See *Padilla v. Kentucky*, 130 S.Ct. 1473, 1481 (2010) ("We have long recognized that deportation is a particularly severe 'penalty' . . ."). That is even more true when the individual being deported has been assimilated into the culture of the United States and has a minimal connection with the country to which he or she is being deported. Here, all these considerations are implicated. Francisco has called the United States home for over twenty years. All of his friends are in the United States. His fiancée is in the United States and his six children are in the United States.  Mr. Flores was part of the social fabric of his community and his family. The prospect of not seeing his wife and children again is going to be devastating.

## CONCLUSION

We appreciate that the Court will consider all of the favorable facts and letters which have been provided on Francisco's behalf and the consequences Mr. Flores will face upon completion of his sentence. We ask the court justly impose a "sentence sufficient, but not greater than necessary" to meet the directives of 18 U.S.C. §3553(a).

Respectfully submitted,


\_\_\_/s/ Jason T. Lorenzon_____
Jason T. Lorenzon
Ohio Bar No. 0082510
Lorenzon Law LLC
5005 Rockside Rd Suite 600
Independence, OH 44131
Phone: (216) 537-3722


\_\_\_/s/Patrick Espinosa_____
Patrick Espinosa
Ohio Bar No. 0093126
Lorenzon Law LLC
5005 Rockside Rd Suite 600
Independence, OH 44131
Phone: (216) 537-3722

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2019, I filed the foregoing with the Clerk of Court using CM/ECF:

                                                                      /s/ Jason T. Lorenzon  
                                                          Jason T. Lorenzon  
                                                          Ohio Bar No. 0082510  
                                                          Lorenzon Law LLC  
                                                          5005 Rockside Rd Suite 600  
                                                          Independence, OH 44131  
                                                          Phone: (216) 537-3722


                                                             /s/Patrick Espinosa  
                                                          Patrick Espinosa  
                                                          Ohio Bar No. 0093126  
                                                          Lorenzon Law LLC  
                                                          5005 Rockside Rd Suite 600  
                                                          Independence, OH 44131  
                                                          Phone: (216) 537-3722